**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**LINDA L. SAYLES, et al.,** **PLAINTIFFS**

**V.** **CAUSE NO.: 3:26-cv-00128-MPM-RP**

**DETREX CORPORATION; ITALMATCH USA CORPORATION; WSP USA INC.; FIRST ENVIRONMENT, INC.; AAE CONSULTING, LLC; DAMES & MOORE, INC.; W.L. BURLE ENGINEERS, P.A.; AVANT CONSTRUCTION; KEVIN MOORE; MICHAEL SLACK; JOHN DOE CORPORATIONS 1-5** **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the Court on Linda L. Sayles, *et al* ("Plaintiffs") Amended Motion to Remand [27]. Defendants Detrex Corporation and Italmatch USA Corporation (collectively, the "Corporations") have filed their response in opposition [29], and Plaintiffs have filed their reply [33]. The Court has reviewed the record and applicable law and is prepared to rule.

## I. FACTUAL BACKGROUND

On April 9, 2026, Plaintiffs herein initiated this suit in the Circuit Court of Yalobusha County, Mississippi, by filing their state court complaint [2] against a number of Defendants. In the state court complaint, Plaintiffs allege that for more than fifty years, Defendants engaged in a continuous course of conduct that exposed the community and residents of Water Valley, Mississippi, to the toxic chemical trichloroethylene ("TCE"), poisoning them.

Plaintiffs' Complaint consists of allegations against two groups of Defendants. First, Plaintiffs seek recovery for products liability and wrongful death against Detrex Corp. and Italmatch USA Corp., (the "Manufacturer Defendants"). Secondly, Plaintiffs seek recovery for general negligence and wrongful death against W.L. Burle Engineers, P.A.; WSP USA, Inc.; First

Environment, Inc.; AAE Consulting, LLC; Dames & Moore, Inc.; Avant Construction; Kevin Moore; and Michael Slack (the "Remediation Defendants"). The argument at hand focuses on W.L. Burle Engineers; AAE Consulting, P.A; Avant Construction; Kevin Moore; and Michael Slack (collectively, the "Nondiverse Defendants").

In the present case, all Plaintiffs named in the Complaint are citizens of Mississippi, as are the Nondiverse Defendants. The Corporations filed a Notice of Removal [1], asserting that the Nondiverse Defendants were improperly joined to defeat the complete diversity requirement for federal jurisdiction, and that their citizenships should therefore be disregarded in determining whether complete diversity exists. In response, Plaintiffs filed their Amended Motion for Remand [27], arguing that the Complaint sets forth the basic allegations required to support a negligence claim under Mississippi law against the Nondiverse Defendants, and that complete diversity therefore does not exist, depriving this Court of subject matter jurisdiction. At issue is whether Plaintiffs have established a cause of action against any of the Nondiverse Defendants. If so, this Court lacks subject matter jurisdiction, and remand is proper.

## II. STANDARD OF REVIEW

### A. Removal Standard

"[A]ny civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." 28 U.S.C. § 1441(a). "Under the federal removal statute, a civil action may be removed from a state court to a federal court on the basis of diversity ... because the federal court has original subject matter jurisdiction over such cases." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (citing 28 U.S.C. § 1441(a)). "On a motion to remand, '[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was

proper.'" *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 212 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Inc. Co.*, 276 F.3d 720, 722 (5th Cir. 2002)).

**B. Improper Joinder Standard**

The burden of demonstrating improper joinder is a heavy one and is placed on the party seeking removal. *McDonal v. Abbott Lab'ys*, 408 F.3d 177, 183 (5th Cir. 2005). To meet it, a removing party may establish federal diversity jurisdiction by demonstrating that the state court plaintiff "improperly joined" all forum defendants. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004).[1] A non-diverse defendant is improperly joined and its citizenship may therefore be disregarded for purposes of evaluating diversity jurisdiction if the removing party demonstrates either of the following: (1) there was actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court. *Id.* at 573. The instant case involves the later inquiry: "The test 'is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district to predict that the plaintiff might be able to recover against an in-state defendant.'" *Id.* In considering whether the plaintiff may recover, the court need not determine whether they will actually, or even probably, prevail on the merits, but must look only for the possibility that they may do so. *Guillory v. PPG Indus., Inc.*, 434 F.3d 30, 308-09 (5th Cir. 2005). The Court likewise evaluates the factual allegations in the light most favorable to plaintiffs and resolves any ambiguities in controlling state law in plaintiffs' favor. *Id.* at 308.

[1] This court notes that the terms "improper joinder" and "fraudulent joinder" are often used interchangeably, and it will do so in this order as well.

## III. DISCUSSION

Plaintiffs assert that remand is proper because they have set forth a viable claim for negligence against the Nondiverse Defendants based on the information available to them. The Corporations, by contrast, argue that remand should be denied, contending that Plaintiffs have failed to establish a viable claim against the Nondiverse Defendants, and that their citizenship should therefore be disregarded. For the reasoning below, the Court finds Plaintiffs' argument well taken and concludes that subject matter jurisdiction is lacking.

### A. Remand is Warranted Because Plaintiffs Stated a Viable Claim of Negligence Under Mississippi Law

Pursuant to 28 U.S.C. § 1332, diversity jurisdiction exists when the matter is between citizens of different states and the amount in controversy exceeds $75,000. Ultimately, the parties of an action must be completely diverse. "The concept of complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (quoting *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968)).

In the present case, the Plaintiffs named in the Complaint are all citizens of Mississippi. The Corporations are diverse parties; however, the Nondiverse Defendants, are citizens of Mississippi. Therefore, diversity jurisdiction does not exist. The Corporations, however, argues that Plaintiffs improperly joined the Nondiverse Defendants.

In alleging fraudulent joinder in this case, defendants' task is made considerably more difficult by the Fifth Circuit's decision in *Smallwood v. Illinois Central Railroad Co.,* 385 F.3d 568 (5th Cir. 2004). A majority of the *en banc* Fifth Circuit in *Smallwood* observed that:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such

> cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.... Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity.

*Smallwood,* 385 F.3d at 573. The Fifth Circuit in *Smallwood* thus emphasized that the fraudulent joinder standard is more akin to a 12(b)(6) standard than the quasi-summary judgment standard which had previously been applied by many district judges in this circuit. Moreover, the Fifth Circuit's admonition that the cases in which a summary judgment standard should be applied are "hopefully few in number" represented a clear shift from the prior practice of many district judges in this circuit, under which such summary inquiries (and denials of motions to remand) were very common.

Here, although the Corporations have submitted summary inquiry evidence, the Court finds a summary inquiry unnecessary because the central issue is whether the Nondiverse parties can survive a Rule 12(b)(6) analysis. Accordingly, the Court is of the opinion that any summary inquiry evidence does not need to be considered in resolving Plaintiffs' Motion to Remand. Therefore, under the familiar Rule 12(b)(6) standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), the Court concludes that Plaintiffs have stated a plausible cause of action against the Nondiverse Defendants and, because complete diversity is lacking between the parties, this Court lacks subject matter jurisdiction.

Plaintiffs argue that their Complaint contains affirmative allegations, made upon information and belief, that TCE pollution occurred at the Facility and that certain Nondiverse Defendants were negligent in the operation or management of the Facility's TCE remediation. According to Plaintiffs, all remediation efforts at the Facility stopped for a period of six (6) years, and during that time, TCE pollution poisoned the surrounding environment. Plaintiffs contend that they have

named all presently known parties that were involved in the remediation efforts during this time, and such available information is enough to set forth a claim for basic negligence in the handling of remediation efforts. In support, Plaintiffs illustrate that the nature and conduct of remediation engineers is a highly fact-sensitive issue under Mississippi law, and that Plaintiffs lack access to such information absent discovery. Therefore, their Complaint should not be subject to dismissal simply because they lack complete knowledge of the failed remediation efforts.

The Corporations' defense centers on Plaintiffs' reliance on "upon information and belief" language in support of their negligence allegations against the Nondiverse Defendants. The Corporations contend that Plaintiffs' Complaint does not contain sufficient specific facts to state a claim against the Nondiverse Defendants and that it is therefore an impermissible shotgun pleading.

The Fifth Circuit's position on this issue may be found in *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719 (5th Cir. 2018). There, the court adopted the rule that the *Twombly* plausibility standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible. *Id.* at 730. The court further instructed that in evaluating complaints before discovery has taken place, courts "must also take account of [the plaintiff's] limited access to crucial information." *Id.* at 731. However, the *Innova* court itself cautioned that its holding "is no license to fish" and that a plaintiff "must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit." *Id.* at 730.

The Court finds that Plaintiffs have a reasonable basis to predict recovery against the Nondiverse Defendants. *Davidson*, 819 F.3d at 765. Plaintiffs have offered sufficient factual

allegations at this stage to plead negligence upon information and belief, since the relevant facts are peculiarly within the possession and control of the Nondiverse Defendants, and Plaintiffs' belief is based on factual information that makes the inference of culpability plausible. At this juncture, the Court does "not decide whether the plaintiff will actually or even probably prevail on the merits, but [instead] look[s] only for a possibility that he may do so." *Dodson v. Spiliada Maritime Corp*., 951 F.2d 40, 42 (5th Cir. 1992).

This court can discern a particular danger in dismissing this case based upon Plaintiffs' failure to allege facts which, they reasonably argue, are not available to them without discovery. In so stating, this court emphasizes Plaintiffs' allegations that remediation efforts inexplicably stopped for a period of six years and that the Nondiverse Defendants had responsibilities relating to those remediation efforts. Under these circumstances, it strikes this court as being entirely plausible that one or more of the Nondiverse Defendants did, in fact, act negligently in this case, and it is unclear how Plaintiffs could have gained knowledge of their "behind the scenes" actions in this regard without first being allowed to conduct discovery. Under these circumstances, this court can discern no good reason why it should, in effect, declare that there is "nothing to see here" and send the Nondiverse Defendants on their way, in the context of a case where the face of the complaint gives every indication that this court completely lacks jurisdiction over it. Indeed, this court has previously noted that:

> [i]n most cases, there is a fundamental anomaly, not to mention a severe judicial inefficiency, in deciding the merits of a case at the very outset in order to determine whether the court even has jurisdiction over it. Indeed, this practice arguably stands the judicial process on its head in many cases and may lead to erroneous results based on incomplete facts or arguments.

*Merkel v. Treestand Manufacturers Ass'n*, No. 4:13-CV-00235, 2014 WL 12654869, at *3 (N.D. Miss. Sept. 3, 2014).

In light of the foregoing, this court concludes that Plaintiffs' motion to remand is due to be granted on the basis of well-established Fifth Circuit precedent, in particular *Smallwood* and *Innova*. This court notes parenthetically, however, that two recent U.S. Supreme Court decisions provide further support for the proposition that district courts should proceed very cautiously in finding diversity jurisdiction in cases where the complaint alleges purely state law claims among non-diverse parties.

The first of these U.S. Supreme Court decisions is the 2025 decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 30, 145 S. Ct. 41, 49 (2025), in which the Supreme Court wrote that:

> When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says. If (as here) the plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves.

*Royal Canin*, 604 U.S. at 30. Significantly, the Supreme Court made it clear that the plaintiff in *Royal Canin* had dropped her federal claim in order to defeat federal question jurisdiction, writing that:

> Royal Canin ... removed the case to federal court based on the asserted violations of the FDCA. That removal properly brought to the District Court not only Wullschleger's FDCA claims, but also her factually intertwined state-law claims. The parties were thus set to litigate the entire suit in federal court. **But that is not where Wullschleger wanted the case to be resolved.** So she countered Royal Canin's move: She amended her complaint to delete its every mention of the FDCA, leaving her state claims to stand on their own. And with that amended, all-state-law complaint in hand, she petitioned the District Court to remand the case to state court.

*Royal Canin*, 604 U.S. at 28–29 (emphasis added).

It thus appears that the plaintiff's actions in *Royal Canin* could be regarded as a form of procedural gamesmanship, and yet nothing in the Supreme Court's ruling indicates that this made any difference to its jurisdictional analysis. To the contrary, the Supreme Court in *Royal Canin*

specifically overruled various circuit court precedent which had taken a more proactive stance in combatting such gamesmanship, including the Sixth Circuit's decision in *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004), abrogated by *Royal Canin,* 604 U.S. at 30. In *Harper*, the Sixth Circuit had written that "'[a] trial court must balance the interests ... when deciding whether to resolve a pendent state claim on the merits" including "whether the plaintiff has used 'manipulative tactics' to defeat removal and secure a state forum, such as 'simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case.'" *Harper*, 392 F.3d at 211 (citation omitted). It seems clear that, by overruling *Harper* and refusing to consider any gamesmanship or "manipulative tactics" by the plaintiff as a basis for looking past the clear allegations of the operative complaint, the Supreme Court placed a much higher priority on what the complaint says and not what the plaintiff's underlying motives (including a desire to be in state court) may have been in drafting that complaint.

While this court does not contend that *Royal Canin* tacitly overrules the fraudulent/improper joinder doctrine, the Supreme Court's admonition that a federal court's "power to decide the dispute dissolves" when confronted with a state law complaint involving non-diverse parties does appear to be a shot across the bow of an expansive application of the doctrine. This court believes that *Smallwood* already fired one such shot, and *Royal Canin* makes it even clearer that federal courts must tread very carefully in ruling upon the merits of a case in order to decide whether they have jurisdiction over it. In so stating, this court submits that combatting gamesmanship on the part of plaintiffs who prefer to be in state court has always formed a tacit or even overt basis for an expansive application of the improper joinder doctrine by some federal judges.

While *Royal Canin* was not a improper joinder case, it seems clear that the Supreme Court was faced with a choice in that case which closely tracks the one facing federal judges considering allegations of improper/fraudulent joinder. In particular, federal judges considering fraudulent joinder allegations must consider whether they should overlook the fact that federal jurisdiction is plainly lacking based on the allegations of the complaint before them and nevertheless engage in an analysis of the merits of the case based upon a belief that the plaintiff is improperly seeking to avoid federal diversity jurisdiction. In the court's view, the fact that Supreme Court in *Royal Canin* rejected the approach of the Sixth Circuit and other circuits which had placed a higher priority on combating gamesmanship or "manipulation" of the pleadings than on the simple question of what the complaint says casts clear doubt over any findings of fraudulent joinder which are based upon a similar choice. Thus, while this court recognizes that *Royal Canin* is not dispositive in this case, it does tend to strengthen its conclusion that courts should not be overly hasty in disregarding the plain allegations of a complaint which, considered on their face, deprive it of jurisdiction to consider the merits of the case.

That brings this court to the second recent U.S. Supreme Court decision which this court regards as significant in this context, namely the 2026 decision of *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 146 S. Ct. 724 (2026). *Hain* deals with the dire legal *effect* of an erroneous finding of fraudulent joinder by a district court and thereby serves as a cautionary tale against resolving close issues in this context in favor of a finding of fraudulent joinder. In *Hain*, the Supreme Court considered an appeal involving a Fifth Circuit improper-joinder removal in which the district court had disregarded Whole Foods' Texas citizenship after concluding that the Texas plaintiffs failed to state a plausible claim against it. *Hain*, 607 U.S. at 421-22.

The Fifth Circuit reversed, holding that the plaintiffs *had* plausibly stated a claim against Whole Foods, that the district court had erred in applying improper joinder, and therefore that diversity had never existed. *Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 308 (5th Cir. 2024). The Fifth Circuit further held that this erroneous finding of fraudulent joinder by the district court required that the entire federal court litigation, including an expensive trial, be vacated. *Palmquist*, 103 F.4th at 308. The Supreme Court in *Hain* unanimously affirmed the Fifth Circuit's ruling, writing that "an uncured jurisdictional defect means that 'the judgment must be vacated, regardless of how efficient it might be to leave the judgment in place" and "[t]hat the parties may need to litigate a new trial in state court does not change the jurisdictional analysis or make the District Court's error an effective cure." *Hain*, 607 U.S. 431–32 (citations omitted). This court believes that *Hain* offers strong support for resolving arguably close fraudulent joinder issues in favor of the plaintiff, since the consequences of an erroneous ruling in this regard can, financially-speaking, be extremely severe.

This court further notes that while *Hain* dealt with the *effect* of an erroneous finding of improper joinder by a district court, Justice Thomas noted in a concurrence that, under his reading of Supreme Court precedent, only cases involving "actual fraud" or "extreme abuse" supported the extreme step of a finding of fraudulent joinder. Specifically, Justice Thomas wrote that:

> I join the Court's opinion in full. I write separately to note my skepticism of the doctrine of "improper joinder," which the District Court invoked to dismiss Whole Foods in this case. The doctrine appears to allow federal courts to enlarge their jurisdiction by assessing the merits of claims over which they lack jurisdiction. ***
> [T]his Court's precedents do not support the lower courts' more recent approach. As I read them, this Court's "fraudulent joinder" precedents concerned only whether the plaintiff avoided federal diversity jurisdiction by bad faith or actual fraud—such as lying about a party's conduct or citizenship. See *Alabama Great Southern R. Co.*, 200 U.S. at 218, 26 S.Ct. 161 (asking whether the plaintiff "attempt[ed] to commit a fraud upon the jurisdiction of the Federal courts"); *Illinois Central R. Co. v. Sheegog*, 215 U.S. 308, 316, 30 S.Ct. 101, 54 L.Ed. 208 (1909) (asking whether a claim was "fraudulent and false"); *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 190, 52 S.Ct. 84, 76 L.Ed. 233 (1931) (asking

> whether the plaintiff committed "actual fraud"). These precedents were limited to cases of "extreme abuse." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F.Supp.2d 590, 596 (ED Ky. 2011) (Thapar, J.). Unlike the lower courts' more recent decisions, they did not appear to turn on the strength of the claims on the merits.

*Hain*, 607 U.S. at 434-37 (Thomas concurring).

While Justice Thomas' concurrence merely represents the views of one justice, his reading of the limited scope of the U.S. Supreme Court precedent dealing with fraudulent joinder appears to be correct to this court. Moreover, the U.S. Supreme Court's unanimous refusal to overlook the plain allegations of the complaint in *Royal Canin* based upon ordinary procedural gamesmanship by the plaintiff arguably provides further indication that, consistent with its prior precedent, the Court would require a showing of bad faith or actual fraud to overlook the allegations of the complaint based on a finding of fraudulent joinder. It thus appears to this court that the validity of the lower court approach of finding fraudulent/improper joinder based on an analysis of the "strength of the claims on the merits," as opposed to a finding of actual fraud, is one which is very much in question under U.S. Supreme Court precedent. This Court emphasizes that the removal in this case fails under *Smallwood* and *Innova* regardless, but it does not the doubts in this context for the record.

This court believes that the Fifth Circuit's approach in the fraudulent joinder context can be harmonized with that of the Supreme Court, since, as in the cases discussed below, the plainly meritless nature of claims against non-diverse defendants may itself serve as important evidence of bad faith on the part of a plaintiff in asserting a claim. *Smallwood* provides standards for assessing the merits of the claims against non-diverse defendants, and it therefore appears to be an important gloss upon the U.S. Supreme Court precedent in this context. It seems clear to this court, however, that, in applying *Smallwood*, a district court must also keep in mind U.S. Supreme Court precedent regarding the overarching purpose of the fraudulent joinder doctrine. Indeed, a district

court could scarcely do otherwise, since Supreme Court precedent is, obviously, binding authority upon it. In this vein, this court believes that Justice Thomas is quite correct in noting the extremely limited nature of the fraudulent joinder doctrine under Supreme Court precedent. *See, e.g. Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218, 26 S. Ct. 161, 165 (1906) (asking whether the plaintiff "attempt[ed] to commit a fraud upon the jurisdiction of the Federal courts"); *Illinois Central R. Co. v. Sheegog*, 215 U.S. 308, 316, 30 S.Ct. 101, 54 L.Ed. 208 (1909) (asking whether a claim was "fraudulent and false"); *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 190, 52 S.Ct. 84, 76 L.Ed. 233 (1931) (asking whether the plaintiff asserted in "good faith a cause of action against those joined" or whether there was proof of "actual fraud … sufficient to justify removal").

In this case, defendants appear to want this court to serve as, in effect, a substitute state court, making an inquiry into plaintiffs' claims under essentially the same standards as a state court would do. But that is not this court's role under the U.S. Supreme Court authority quoted above. Rather, that precedent makes clear that this court's role is primarily to protect the basic integrity of the judicial process, such as by asking whether the plaintiff is attempting to "commit a fraud upon the jurisdiction of the Federal courts." *Thompson*, 200 U.S. at 218. That necessarily confronts defendants with a much more stringent standard than the one they would have this court apply. The limited nature of the fraudulent joinder doctrine can also be inferred from the Supreme Court's statement in *Royal Canin* that, generally-speaking, a federal court's "power to decide the dispute dissolves" when confronted with state law claims against non-diverse defendants. This admonition would be meaningless if this court were to proceed to dismiss non-diverse defendants under anything other than the limited circumstances permitted by the fraudulent joinder doctrine.

This court notes parenthetically that precedent from other federal circuits likewise supports a conclusion that fraudulent/improper joinder is a doctrine which should be applied with great caution. Indeed, E. Farish Percy noted in a 2004 law journal article that, pre-*Smallwood*, the Fifth Circuit saw a dramatically larger number of fraudulent joinder removals than any other federal circuit. *See* E. Farish Percy, Making a Federal Case of It: Removing Civil Cases to Federal Court Based on Fraudulent Joinder, 91 Iowa L.Rev. 189, 240 tbl. 1 (2005). It is thus apparent that, outside the limited context of the pre-*Smallwood* Fifth Circuit, fraudulent joinder has always been a doctrine which found application only in rather extreme cases. *Smallwood* has brought the Fifth Circuit in line with the other federal circuits in this regard, and, in so doing, it has (in this court's experience) resulted in a rather dramatic decline in fraudulent joinder removals in this district.

This court would hasten to add that, even after *Smallwood*, there are cases in which a finding of fraudulent joinder is appropriate. In *Glaser v. Wal-Mart Stores E., LP*, 2024 WL 915627, at *3 (N.D. Miss. Mar. 4, 2024), for example, this court considered a case in which a slip-and-fall plaintiff asserted claims against a non-diverse Walmart manager, alleging that he was responsible for injuries he suffered in an April 7, 2023 incident. Walmart responded with proof that the manager "was on medical leave from March 1, 2023, to September 1, 2023," which led this court to conclude that the plaintiff was acting in bad faith in seeking to hold the manager responsible for his injuries. *Glaser*, 2024 WL 915627, at *2-3. This court accordingly denied the plaintiff's motion to remand based on a finding of fraudulent joinder, just as it had done the previous year in another slip-and-fall case against Walmart. In *Capnord v. Cosey,* 618 F. Supp. 3d 348, 351 (N.D. Miss. 2023), this court found fraudulent joinder in a case where the proof demonstrated that the non-diverse Walmart employee whom plaintiff sought to hold liable for his injuries was actually a "digital coach" at the store, whose work responsibilities were entirely online and had no arguable

connection to the accident in that case. This court therefore regarded *Capnord* as one of the unusual cases in which a summary judgment-type inquiry into the facts was called for, and it found that plaintiff's claims against the employee failed under such an inquiry. *Capnord,* 618 F. Supp. 3d at 351-52.

This court regards *Glaser* and *Capnord* are examples of the sort of cases in which the application of fraudulent joinder is appropriate even post-*Smallwood*, since the U.S. Supreme Court and Fifth Circuit precedent clearly indicates that district courts should not tolerate bad faith or actual fraud in pleadings. It would be a different matter entirely for this court to accept defendants' fraudulent joinder arguments in this case, where it is confronted with allegations that there was a complete failure to conduct the legally-required remediation efforts for years and that the non-diverse defendants had responsibility for conducting those efforts. Moreover, any vagueness in the plaintiffs' allegations of negligence in this regard strike this court as being understandable in light of their limited access to the relevant information. Once again, the Fifth Circuit made it clear in *Innova* that, in considering the sufficiency of a complaint, it must "must also take account of [the plaintiff's] limited access to crucial information," *id.,* and it seems clear that Plaintiffs do, in fact, have limited access to crucial information in this case without first being allowed to conduct discovery.

*Innova* and *Smallwood* aside, this Court believes that the limited scope of the fraudulent joinder doctrine under U.S. Supreme Court and federal circuit court precedent would cast very serious doubt over any decision to retain jurisdiction over this case based upon any arguable vagueness in the allegations of negligence in this case. In so stating, this Court observes that there are many cases filed in state courts where the allegations of the complaint could be regarded as vague in some respects and where there is a real question whether the state law claims against the non-

diverse defendant(s) will be able to survive a summary judgment motion in state court. These are, in most cases, simple issues relating to the merits of a case, and state courts resolve such issues on a daily basis.

It should also be noted that, like federal judges, state court judges generally have extensive procedural tools at their disposal to help them assess the merits of a state law claim over which their jurisdiction is clear. To give one example, state courts generally have wide discretion to permit plaintiffs to amend their complaints in cases where the initial complaint arguably falls short in its allegations but where it appears that the underlying claims might potentially have merit. *See e.g.* Mississippi Rule of Civil Procedure 15(a)(providing that leave to amend "shall be freely given when justice so requires"). By contrast, a federal court considering a fraudulent joinder removal is generally faced with a binary choice between 1) dismissing the non-diverse defendants on a finding of fraudulent joinder or 2) remanding the case to state court.

Moreover, it seems clear that, until such time as the non-diverse defendants are dismissed, there are dark jurisdictional clouds hanging over anything a federal court might choose to do in assessing the merits of the state law claims. In this Court's experience, the jurisdictional limitations confronting federal judges in assessing fraudulent joinder removals tend to create a hurried, "shoot first and ask questions later" atmosphere which is far from conducive to reaching a reliable result regarding the merits of the case. Moreover, the fact that state courts have no such jurisdictional constraints in assessing the merits of the case and have unrestricted access to the full range of procedural tools provided by the rules of civil procedure generally renders them a more reliable forum in which to consider these issues than the fraudulent joinder context.

It should thus be apparent that, when a case is removed on the basis of fraudulent joinder, it is being moved from a court with the unquestioned jurisdiction to provide a full, complete and

unhurried consideration of the merits of the case to one which must decide *now* on the basis of the allegations of the initial complaint (and sometimes limited proof such as affidavits) whether the non-diverse defendants should be dismissed. There are some unusual cases such as *Glaser* and *Capnord* where this Court can, in fact, consider such limited proof and decide on the basis thereof that it is dealing with a plaintiff who is acting in bad faith and without any real reason to believe that he might be able to recover against the non-diverse defendants. This is not such a case, however. To the contrary, it appears to this Court that the Plaintiffs in this case have a good faith reason to believe that discovery in this case might reveal the existence of negligence on the part of one or more of the Nondiverse Defendants, and Fifth Circuit precedent such as *Innova* does not punish them for failing to allege facts which they are not in a position to know without discovery. This Court seriously doubts its jurisdiction to even conduct such discovery in this case, but, even if it had it, it would still regard the process of extensively litigating a case in order to decide whether it had jurisdiction over it as being both wildly inefficient and somewhat absurd on its face.

This Court would further emphasize that, even in cases where the non-diverse defendants are eventually dismissed in state court on summary judgment, that does not mean that those cases belonged in federal court in the first place.[2] Indeed, the simple fact is that many state law claims eventually prove to lack merit, just as many federal claims prove to lack merit. Nevertheless, it ordinarily falls to state courts to decide the merits of state law claims over which they have jurisdiction, and it ordinarily falls upon federal courts to recognize, as the Supreme Court made

---

[2] The U.S. Supreme Court has long recognized this fact, including by adopting the so-called "voluntary-involuntary rule." *Great N. Ry. Co. v. Alexander,* 246 U.S. 276, 281, 38 S. Ct. 237, 239, 62 L. Ed. 713 (1918). This rule provides that, except in cases of a "fraudulent purpose to defeat removal," only a voluntary dismissal by the plaintiff, and not an order of the state court dismissing non-diverse defendants, may give rise to removal jurisdiction. *Id.* The Supreme Court has explained this rule as being based on the fact that the "trial court may have erred in its ruling, or there may have been evidence which, though insufficient to sustain a verdict, would have shown that plaintiff had reasonable ground for a bona fide belief in the liability of both defendants." *Kansas City Suburban Belt Ry. Co. v. Herman*, 187 U.S. 63, 71, 23 S. Ct. 24, 27, 47 L. Ed. 76 (1902).

clear in *Royal Canin*, that their "power to decide the dispute dissolves" when confronted with state law claims against non-diverse defendants. Moreover, the quite limited role which fraudulent joinder has historically played in federal litigation makes it clear that it ordinarily lies to state courts to decide whether state law claims filed against non-diverse defendants in their courts have potential merit. Indeed, it seems clear that, if simple doubts about the merits of state law claims were sufficient reason for federal courts to seize jurisdiction over cases filed in state court, then there would have been far more fraudulent joinder removals over the decades than, as the Percy article demonstrates, have actually occurred. This Court accordingly concludes that it lacks jurisdiction over the complaint in this case and that it should be remanded to state court.

**CONCLUSION**

For the reasons stated above,

IT IS THEREFORE ORDERED that Plaintiff Linda L. Sayle's, *et al* Amended Motion to Remand to State Court, [27] is GRANTED.

SO ORDERED, this the 23rd day of October, 2026.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI